## Case No. 2,250.

### BUTTERFIELD v. BOYD et al.

[4 Blatchf. 356;[1] 18 How. Pr. 526; 41 Hunt, Mer. Mag. 708.]

Circuit Court, S. D. New York. Sept. 21, 1859.

COLLISION—STEAM AND SAIL—DUTY OF STEAMER —BURDEN OF PROOF.

1. A libel for a collision dismissed, on a conflict of testimony as to which vessel caused the collision by drifting against the other.
[Cited in The Joseph W. Gould, 19 Fed. 787.]

2. Even if it appeared that the respondent's vessel drifted against the other, the burden would be on the libellant to show that the drift could have been prevented, or was occasioned by mismanagement.
[Cited in The Florence P. Hall, 14 Fed. 416.]
[See note at end of case.]

3. A steamer ought not, with a flood tide tending to set her towards a sailing vessel engaged in casting off a hawser by which she is being towed by a tug, to take a position so near to the sailing vessel that a collision will ensue from drifting.
[See note at end of case.]

4. A steamer, with steam up and sails set, is bound to make an effort to avoid a collision with a sailing vessel, which is likely to result from drifting.
[See note at end of case.]

[Appeal from the district court of the United States for the southern district of New York.]

In admiralty. This was a libel in personam, filed in the district court, by [Carlos Butterfield] the owner of the Mexican steamer Iturbide, against [John J. Boyd and others] the owners of the ship Mercury, to recover damages occasioned by a collision between the two vessels. [Decree of the district court dismissing the libel affirmed.]

Francis B. Cutting, Welcome R. Beebe, and Dean & Donohue, for libellant.

Washington Q. Morton, Hamilton Morton, and Fullerton & Dunning, for respondents.

NELSON, Circuit Justice. The collision in this case occurred on the 4th of November, 1854, after both vessels had passed the bar outside of Sandy Hook. The ship had been towed to sea, and her hands were engaged in taking in the hawser, which had been cast off by the tug a short time before the accident occurred. The steamer had passed the ship as she was going through the Gedney channel, and, soon after, hove to, for

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

the purpose of sending her pilot and some passengers on board the tug, which was about to return to the city. At the time the hawser was cut off, the steamer was some quarter or half a mile to the windward, and in advance of the ship. The wind was from the north-northwest, a pretty fresh breeze, and the tide was about half-flood, setting in a direction nearly opposite to the wind. The steamer was heading northeast, and the ship about east or east-by-south. The steamer had come down the bay with steam and canvas, topsails and topgallant sails, jib and flying jib. When she hove to, her jib and flying jib were lowered. Her fore and main topsails, and her fore and main topgallant sails were set, and her head sails were laid back. The ship had only her main topstaysail set, and was under no other sail. The vessels came together nearly broadside, the starboard side of the steamer against the larboard side of the ship, within some ten or fifteen minutes after the one had hove to and the other had commenced taking in the hawser. They drifted together, and the serious dispute in the case is, as to which party was in fault, in permitting his vessel to drift against the other. Four witnesses, including the master, mate and pilot of the steamer, and a passenger on board of her, have been examined for the libellant, and concur that the ship drifted against the steamer. Five witnesses on board of the ship, including the master, the first and third mates, the pilot and a hand, have been examined, and all concur that the steamer drifted against their vessel. The court below dismissed the libel, and it is difficult, upon this conflict of testimony, to see how it could have arrived at any other conclusion, unless there is something else in the case, charging fault upon the respondents' vessel.

The testimony of the master of the steamer is relied on to establish fault. He states that the helm of the ship was starboarded, and that, with the headway she had on at the time the hawser was thrown off, from the impetus given to her by the tug, she came up in the direction of the steamer, and caused the collision. This, however, is but conjecture on his part, as he saw no such manoeuvre. All of the witnesses on board of the ship deny this, and concur in saying, that as soon as it was seen that the vessels were approaching each other, the helm of the ship was put hard to port, and her jib was put up, or attempted to be put up. The only fault which the master of the steamer pretends, in his testimony, was chargeable upon the ship, was in this false movement of starboarding her helm, thus abundantly disproved. And no fault is imputed to her by any of the witnesses, except the fault of drifting against the steamer. Even if this fact had been established, which it is not, the burden would still rest on the libellant, to show that the drift of the ship could

have been prevented by proper and skilful management, or that it was occasioned by some positive mismanagement on the part of her master and hands.

It was suggested, on the argument, that the main topstaysail was insufficient to give steerage way and govern the direction of the ship. But it is agreed that it would have been improper to set the sails while the hawser was being taken in; and it appears that every preparation was made to set them as soon as this service was finished. It was also suggested, that the hawser should not have been thrown off while the vessel was thus near the steamer. But it may be answered, that the steamer should not have taken a position so near to the ship, with a flood tide tending to set her towards the ship. The hawser was thrown off at the usual place.

Besides all this, I feel bound to say that the management of the steamer, in the position in which she lay, was not such as to commend her to any very favorable consideration. She had her steam up, and her sails set, and yet it does not appear that any effort was made, by the use of either, to avoid the collision. It is agreed that the vessels were apart from each other from a quarter to a half of a mile, before they began to drift, and it is difficult to resist the conclusion, that if there had been proper attention to duty, under the circumstances, on the part of those on board of the steamer, she might have avoided the accident. At least, she should have made the effort. I am satisfied that the decree of the court below was right, and should be affirmed.

[NOTE. A steamer, by reason of her extraordinary means, is bound to take prompt and effective measures to avoid collision with a sailing vessel. The Bay State, Case No. 1,150, affirming Id. 1,148; St. John v. Paine, 10 How. (51 U. S.) 557; Carpenter v. The Island City, Case No. 7,108; The Oregon v. Rocca, 18 How. (59 U. S.) 570; The Sampson, Case No. 12,280; New York & L. U. S. Mail S. S. Co. v. Rumball, 21 How. (62 U. S.) 372; Twibell v. The Keystone, Case No. 14,285; The Fannie. 11 Wall. (78 U. S.) 238; The Illinois, 103 U. S. 298; Baker v. The City of New York, Case No. 765; The R. B. Forbes. Id. 11,598; The Jamaica Steam Ferry Boat Collision, Id. 7,173; The Kentucky, Id. 7,716; The Narragansett, Id. 10,019; The Iola, Id. 7,057; The Empire State, Id. 4,475; Hall v. The Buffalo, Id. 5,927; The Falcon, 19 Wall. (86 U. S.) 75. The presumption of fault arising from the collision is on the steamer, and the burden of proof to show inevitable accident or the fault of the sailing vessel also lies on her. The Pennland, 23 Fed. 551; The Oregon v. Rocca, supra; The Colorado, 91 U. S. 692, affirming Case No. 3,028; New York & L. U. S. Mail S. S. Co. v. Rumball, 21 How. (62 U. S.) 372; Perkins v. The Hercules, 1 Fed. 925; The Fannie. 11 Wall. (78 U. S.) 238; The Wenona. Case No. 17,411; Farr v. The Farnley, 1 Fed. 631; The New Champion, Case No. 10,146; The Java, Id. 7,233; Seamen v. The Crescent City, Id. 12,581; Lonan v. The C. H. Northam, Id. 8,473. Each vessel suffering damage from a collision caused by inevitable accident must bear its own loss. Stainback v. Rae, 14 How. (55 U. S.) 532; The Eliza and Abby, Case No. 4,349; The Brooklyn, Id. 1,939; Pharo v. Smith, Id. 11,063; The Nautilus, Id. 10,058; Reeves v. The Constitution, Id. 11,659; Ward v. The Fashion, Id. 17,154; Evans v. The John F. Warner, Id. 4,563.]